**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 6, 2018**

# In the Court of Appeals of Georgia

A18A1013. LYNCH v. THE STATE.

RICKMAN, Judge.

Following a hearing during which Marvin Rosvet Lynch unsuccessfully attempted to fire his retained counsel, he entered a guilty plea to three counts of homicide by vehicle in the first degree, one count of hit and run, and one count of driving under the influence of alcohol to the extent that it was less safe for him to drive (DUI less safe) on the advice of the same counsel that he wished to fire.[1] Lynch

---

[1] The grand jury indicted Lynch for six counts of homicide by vehicle in the first degree, two counts of hit and run, one count of driving under the influence of alcohol with an unlawful blood concentration (DUI per se) and driving under the influence (less safe). As part of the negotiated guilty plea agreement, the State agreed to nolle pros three counts of homicide by vehicle in the first degree, one count of hit and run, and the count of driving under the influence (per se). Lynch's guilty plea to driving under the influence (less safe) merged with the homicide by vehicle counts for the purpose of sentencing.

filed a timely motion to withdraw his guilty plea, which the trial court denied. On appeal, Lynch contends that the trial court violated his Sixth Amendment right to counsel when it denied his request to fire his counsel and thus erred when it denied his motion to withdraw his guilty plea. For the following reasons, we reverse.

"The standard for reviewing a denial of a motion to withdraw a guilty plea is well established. After sentencing, the decision on a motion to withdraw a guilty plea is within the trial court's discretion and withdrawal of the plea is allowed only when necessary to correct a manifest injustice." (Citation and punctuation omitted.) *Gay v. State*, 342 Ga. App. 242, 243 (803 SE2d 113) (2017).

Lynch was indicted on June 2, 2016, and his trial counsel filed an entry of appearance eight days later. Lynch's case was placed on a trial calendar and a pre-trial hearing was held approximately six months after his indictment was filed.

Lynch's trial counsel began the pre-trial hearing by stating, "I think [Lynch] would like to address the court as far as replacing me, and once you make the decision either way, then if you decide to keep me in it, I will put on the record that I don't want to be replaced." Lynch then addressed the trial court and stated that he "want[ed] to fire [trial counsel] because of the lack of communication [they] have." Lynch went on to explain that he had concerns with the number of times that his trial

2

counsel had met with him in jail and that, ultimately, "[trial counsel] doesn't seem to want to take this case as far as a defensive matter."

The trial court stated "[i]f the court feels that [trial counsel] is providing adequate representation for you and this case is on a trial calendar, then you're going to have to have [trial counsel] represent you." Inexplicably, in the open courtroom with the State present, trial counsel then began a long narration which included, among other things, all of the evidence against Lynch, the opinions of experts he had consulted with, speculation as to how high Lynch's blood alcohol level was at the time of the accident, as well as his opinion that the search warrant used to obtain Lynch's blood was sound, that the case against Lynch was "damning," and that Lynch was "not going to win." Trial counsel also cited to a previous DUI conviction that the State would be able to introduce, Lynch's lack of defense to the charges, conversations he had had with Lynch, and his opinion that while Lynch did not want to accept the State's plea offer, the situation "was not going to get better if we try it." Trial counsel concluded by explaining that he recommended that Lynch enter a negotiated plea, and that he "would prefer not to be taken off the case because I know at some point, if we lose or if he does a plea, they're going to file a complaint, but I'm doing my job."

3

The trial court asked both parties if they would be prepared to try the case the following week and then inquired as to the terms of plea offer. The trial court stated,

> I am not going to allow [trial counsel] to be removed from the case at this time. I find that he's prepared. He's done adequate and extensive preparation for trial. And I will say that the recommendation based on the facts as I understand them in this case where three individuals died, the State's recommendation on the negotiated plea is more than reasonable. We can proceed with a pretrial today. If we don't, then I assume the State is not going to extend the recommendation past today and we can go forward with trial.

Following the announcement that Lynch would be prohibited from firing his trial counsel, he and his trial counsel had an off-the-record discussion in the courtroom during which the State recognized the need for Lynch and trial counsel to speak privately, asked for them to be able to speak somewhere else, and expressed concern about potentially overhearing a privileged conversation. The trial court agreed to let Lynch and trial counsel speak somewhere else and then reiterated "[b]ut let me make myself clear, [trial counsel], I'm not going to pretry this case again. I'm not going to require the victim's family members to all come up to court again, so it's a plea today or a trial." The record is unclear as to how long the discussion between

4

Lynch and trial counsel lasted but, afterward, trial counsel announced that Lynch had decided to enter a guilty plea.

At the hearing on the motion to withdraw the guilty plea, trial counsel testified that he was informed prior to the date of the plea hearing that Lynch wished to fire him because he "wanted a defense to the case." Lynch testified, "I never knew that I [was] at the mercy of the [c]ourt that this lawyer, I have to be stuck with because I was at a rock and a hard place. . . . I wanted to get rid of him." He further testified that, "I was even breaking down in tears there [during the plea] because I didn't know how that was possible to go with an attorney that you paid for and somebody could say that you have to s[t]ick with them."

In its order denying Lynch's motion to withdraw his guilty plea, the trial court explained that "[trial counsel] was prepared for trial, that he had made an adequate and extensive preparation for trial, and that there was no evidence of ineffective assistance of counsel on [the date of the plea hearing]. As [Lynch] had not retained other counsel and there was no legal reason to remove [trial counsel], this Court moved forward with the pre-trial of the case." The trial court found that "[Lynch] made no arrangement for counsel to replace [trial counsel], either by making inquiry with the Public Defender's Office or by hiring other counsel. Therefore, he waived

5

his ability to have counsel of his choice on [the date of the plea hearing]." Further, the trial court noted that "[i]t is also clear from the record that the State had a solid case against [Lynch] to establish the elements of each offense charged beyond a reasonable doubt if the case were taken to trial." The trial court concluded, "[a]s [Lynch] was represented by effective counsel and this [c]ourt did not preclude any other counsel of his choice from appearing on his behalf, [Lynch's] right to counsel was not violated."

On appeal, Lynch contends that the trial court violated his Sixth Amendment right to counsel when it denied his request to terminate his counsel and thus erred when it denied his motion to withdraw his guilty plea. We agree.

"The Constitution of Georgia, Art. I, Sec. I., Par. XIV has been interpreted to confer upon every criminal defendant the right to be represented by counsel of his own selection whenever he is able and willing to employ an attorney, and uses reasonable diligence to obtain his services." (Citation and punctuation omitted.) *Alwi v. State*, 331 Ga. App. 903, 904 (773 SE2d 387) (2015). And "[u]nder the Sixth Amendment [of the United States Constitution], a defendant who does not require appointed counsel enjoys both the right to effective assistance of counsel and the right to choose who will represent him." (Citation and punctuation omitted.) *U. S. v.*

6

*Jimenez-Antunez*, 820 F3d 1267, 1270 (III) (11 Cir. 2016). "The right to select counsel of one's choice has been regarded as the root meaning of the constitutional guarantee." (Citation and punctuation omitted.) Id. "The right to choose counsel is incomplete if it does not include the right to discharge counsel that one no longer chooses. A defendant exercises the right to counsel of choice when he moves to dismiss retained counsel, regardless of the type of counsel he wishes to engage afterward." Id. at 1271 (III). "The denial of the right to counsel of choice is structural error." Id.

However, "a defendant's right to counsel may not be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same." (Citation and punctuation omitted.) *Alwi*, 331 Ga. App. at 904-905. "[A] trial court must balance the defendant's constitutional right to the counsel of his choosing against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice." (Citation and punctuation omitted.) Id. at 905.

In *Alwi v. State*, on the morning of the defendant's scheduled trial, the defendant informed the trial court that he wished to fire his counsel and requested an

7

eight-week continuance. *Alwi*, 331 Ga. App. at 903. Trial counsel "could not go into details due to attorney-client privilege," but informed the court that she and the defendant were opposed on some issues. Id. The trial court granted the defendant a two-day continuance, and, when the case was again called for trial, the defendant informed the trial court that he and his old counsel were still at an "impasse," but that he obtained new counsel who requested a two-week continuance. Id. at 903-904. The trial court engaged in the required balancing test and denied the continuance. "[T]he trial court informed [the defendant] that he had three options: proceed to trial with his old counsel, proceed with his new counsel instanter, or represent himself. [The defendant] opted to proceed with his old counsel." Id. Recognizing that the trial court had engaged in the required balancing test, we were unable to conclude that the trial court's ruling represented a clear and manifest abuse of discretion. Id. at 904-905.

Here, the trial court did not engage in the necessary balancing test. The standard the trial court used to determine if Lynch should be allowed to terminate his retained trial counsel was whether the trial court felt that trial counsel was providing effective representation. This is the correct inquiry when confronted with a situation where a defendant wishes to terminate court-appointed counsel, but not when a defendant wishes to terminate hired counsel. See *Durham v. State*, 185 Ga. App. 163,

164 (1) (363 SE2d 607) (1987); compare *Alwi*, 331 Ga. App. at 905. While it is unclear from the record the exact date on which Lynch's case was to be called for trial, it is undisputed that Lynch made his motion to terminate his counsel at his pre-trial hearing, and not on the morning of his scheduled trial. However, Lynch still was given no other option than proceeding to trial with his retained counsel.

Instead of giving Lynch options other than being required to be represented by an attorney he wanted to fire, the trial court stated, "that the recommendation based on the facts as I understand them . . . the State's recommendation on the negotiated plea is more than reasonable" and then informed trial counsel that Lynch could choose between a plea that day or trial. The trial court's understanding of the facts was probably due to trial counsel's detailed recitation of the "damning" case against Lynch, which included arguably privileged information and attorney work product. While making no comment on the propriety of the trial court's statement regarding the plea recommendation, we note that "[t]he trial judge should not participate in plea discussions." Uniform Superior Court Rule 33.5 (A). See *Winfrey v. State*, ___ Ga. ___ (II) (816 SE2d 613) (2018).

The trial court applied the wrong standard when it denied Lynch's motion to fire his counsel, failed to engaged in the required balancing test, and gave Lynch no

9

alternative to proceeding with retained counsel whom he wished to fire. Under the circumstances, the trial court violated Lynch's Sixth Amendment right to counsel of his choosing and Lynch should have been allowed to withdraw his guilty plea to correct a manifest injustice. See *Gay*, 342 Ga. App. at 243 ("test for manifest injustice will by necessity vary from case to case"). The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion. See generally *Gay*, 342 Ga. App. at 245-246 (holding that a defendant should have been allowed to withdraw his guilty plea to correct a manifest injustice where the trial court misstated the range of possible sentence); see also *Sanders v. State*, 169 Ga. App. 125 (1) (312 SE2d 160) (1983) (allowing a defendant to withdraw guilty plea where trial court failed to inform him that he intended to reject the plea agreement and, thus, he could withdraw his guilty plea prior to sentencing as a matter of right).

*Judgment reversed and case remanded. McFadden, P. J., and Ray, J., concur.*