### S05A0771. MILEY v. THE STATE.
(614 SE2d 744)

HINES, Justice.

James Miley has been indicted for murder, rape, aggravated battery, and kidnapping with bodily injury, and the State has given notice of its intent to seek the death penalty. This Court granted Miley's application for interim appellate review and directed the parties to address the following question:

---

[Did] the trial court [err] by denying Miley's motion [to suppress] regarding the warrant to search Miley's house[?]

For the reasons set forth below, this Court concludes that the trial court erred regarding the search warrant and remands the case to that court for further proceedings consistent with this opinion.

Upon learning of the disappearance of Ashley Neves, police began searching for her and requested that anyone who had seen her prior to her disappearance contact them. Shortly after Ms. Neves's body was found on May 21, 2000, Detective Herb Scott received information that Miley was at the police station. Detective Scott, believing Miley to be of interest, went to the station to interview him. During this interview, Detective Scott asked Miley if he could accompany Miley to Miley's bedroom to retrieve a book bag that a witness had seen Miley wearing near the crime scene. Miley agreed to the request, but refused to sign a consent form. Detective Scott was unwilling to retrieve the book bag without Miley's written consent. Once Miley left the station, Detective Scott prepared an affidavit, presented it to a magistrate without providing any oral testimony, and obtained a warrant to search a residence located at a specified address.

The affidavit presented to the magistrate stated the following:

James Christopher Miley ws [sic] identified as the person who wa [sic] last seen with the victim on 5-20-00, at the place of her death. The person who killed the victim, Ashley Nicole Neeves [sic], removed some of her clothing from the scene. When I asked the subject, Mr. Miley[,] to sign a consent form so I could enter his house and retrieve his book bag, he refused. It is known that the subject had a book bag with him in the area of the murder. Mr. Miley was willing to bring a book bag out of the house, but not to let me accompany him inside to look at the bag.

The affidavit also stated that the date of Ms. Neves's murder was "5-20-00." Miley argued to the trial court that the affidavit did not show probable cause to search his house.

The affidavit attempted to provide two footings showing that Miley was the likely perpetrator of the murder. The first was the suggestion that Miley's refusal to consent in writing to allowing Detective Scott to enter Miley's house to seize the book bag was evidence of Miley's guilt. However, this refusal was the exercise of a constitutionally protected right available to any person. Thus, this method of suggesting Miley's guilt was improper and should have been disregarded in evaluating the sufficiency of the affidavit to show

probable cause. See *Gardner v. State*, 255 Ga. App. 489, 493-494 (2) (566 SE2d 329) (2002); *State v. Kwiatkowski*, 238 Ga. App. 390, 393 (519 SE2d 43) (1999). The second, and only proper footing of logic in the affidavit that suggested that Miley was the perpetrator, relied on the assertions that Miley was the last person seen with the victim on the date of her death at the place of her death, and that Miley had a book bag at that time. These assertions were insufficient to show probable cause to believe that Miley was the perpetrator, because they failed to detail how close to the time of the murder's commission Miley had been seen with the victim, because they failed to describe the circumstances under which Miley and the victim had been seen together, and because an innocent person could have had a book bag at the unspecified scene of the murder. Nothing of a properly probative nature in the affidavit, other than this inadequate suggestion of Miley's guilt, even attempted to make a connection between the murder and the house to be searched. Therefore, this Court must conclude, even affording the magistrate's decision the "substantial deference" it is due, that the affidavit failed to set forth "a 'substantial basis' for concluding that probable cause existed" for the search of the specified house. *DeYoung v. State*, 268 Ga. 780, 786-787 (7) (493 SE2d 157) (1997) (quoting *Grier v. State*, 266 Ga. 170, 172 (2) (b) (465 SE2d 655) (1996)). Because Georgia law has no good faith exception regarding search warrant requirements, the lack of probable cause necessary for the warrant's issuance requires the suppression of the evidence seized in Miley's house. *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992) (applying OCGA § 17-5-30 (b)).

Inasmuch as the above analysis is dispositive of the question at issue, this Court need not address Miley's remaining arguments.

Upon remand, the trial court shall conduct proceedings consistent with this Court's opinion, including consideration of any relevant motions Miley may file or seek to have reconsidered.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 6, 2005.

*Jackson & Schiavone, George T. Jackson, Newell M. Hamilton, Jr.*, for appellant.

*Stephen D. Kelley*, District Attorney, *George C. Turner, Jr.*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, for appellee.